UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ETHEL J. HUNTER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:04CV00062 ERW |
| vs. | ) | |
| | ) | |
| RAMADA WORLDWIDE, INC. f/k/a | ) | |
| RAMADA FRANCHISE SYSTEMS, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendants Pete and Thelma Katsaliros's Motion for Summary Judgment [doc. #34] and Ramada Worldwide, Inc. f/k/a Ramada Franchise Systems, Inc.'s Motion for Summary Judgment Against Plaintiff [doc. #37].

### I.   BACKGROUND FACTS[1]

---

[1]The Court's recitation of facts is taken largely from the parties' statements of uncontroverted material facts. Pursuant to Local Rule 7-4.01(A), a party moving for summary judgment must file a memorandum in support of the motion, which includes citations to any authorities on which the party relies. Further, pursuant to Local Rule 7-4.01(E), this memorandum must "have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations." Each memorandum in opposition "shall include a statement of material facts as to which the party contends a genuine issue exists." The matters set forth in the moving party's statement of uncontroverted facts are deemed admitted for purposes of the summary judgment motion unless they are specifically controverted by the opposing party.

The Court notes that the Statement of Uncontroverted Material Facts in Support of Defendants Pete and Thelma Katsaliros's Motion for Summary Judgment [doc. #36], the Statement of Material Facts as to which Plaintiff, Ethel J. Hunter, Contends a Genuine Dispute (Issue) Exists, in Opposition to the Summary Judgment Motion of Peter and Thelma Katsaliros, Pursuant to Local Rule 7-4.01(E) [doc. # 50], and the Statement of Material Facts as to which Plaintiff, Ethel J. Hunter, Contends a Genuine Dispute (Issue) Exists, in Opposition to the Summary Judgment Motion of Ramada Franchise Systems, Inc., Pursuant to Local Rule 7-4.01(E) [doc. #49] each fail to comply with the Local Rule. These filings include legal arguments

1

On May 4, 2004, Plaintiff Ethel Hunter ("Plaintiff") filed this action against Peter and Thelma Katsaliros ("the Katsaliroses") and Ramada Franchise Systems, Inc. ("Ramada"),[2] seeking damages for injuries resulting from an alleged accident which took place on June 29, 2001 at a Poplar Bluff, Missouri, Ramada Inn (the "Hotel" or "Facility") owned and operated by the Katsaliroses. On the day of the accident, Plaintiff and her niece, Pamela Harper, along with Ms. Harper's son, flew from Toledo, Ohio, to St. Louis, Missouri. They then drove from St. Louis to Poplar Bluff, Missouri, in order to attend Plaintiff's high school reunion. The reunion activities were scheduled to occur from June 29, 2001 through July 1, 2001, and some of the activities were scheduled to take place at the Hotel. According to Plaintiff, shortly after her arrival, while walking through a common area of the Hotel, she stepped onto a garden hose and fell, injuring her foot and hip. It was later learned that an employee of Peter Katsaliros, Bobby Wayne Revelle, had been using the garden hose to fill the Hotel swimming pool because the spigot designed to be used for filling the swimming pool was in disrepair. Once the pool had been filled, the garden hose was pulled back from the swimming pool and remained

---

and conclusory statements rather than the issues of fact that the Local Rules require. Including legal arguments in a Rule 7-4.01(E) statement is improper and is not contemplated by the Local Rules; rather, the appropriate place for making legal arguments is in the memorandum of law. In accordance with the Court's discretion as to such matters, the Court will construe the above referenced filings as follows: First, those portions of the above referenced filings which contain legal arguments will be treated as if they were contained in the appropriate memorandum of law. Second, where a party has specifically controverted a particular fact in a manner contemplated by the Rules, that dispute is noted in the Court's recitation. Finally, where a responding party has included additional facts, those additional facts are included in the Court's analysis to the extent the facts are material.

     Failure to comply with the Local Rules places an unwarranted burden on the Court and opposing counsel. The Court reminds the parties that all future filings, whether in this case or in any other case before this Court, must comply with all applicable procedural rules.

[2]Ramada Franchise Systems, Inc. is now known as Ramada Worldwide, Inc. The Court will order the Clerk to amend the docket sheet to reflect this change in name.

"bunched up, in a zigzag fashion" across a portion of the common area through which Plaintiff was walking.

Ramada, a foreign corporation registered to do business in Missouri, was the franchisor of the Hotel until Ramada terminated its relationship with the Katsaliroses in 2001. Ramada is one of the largest guest lodging facility franchise systems in the United States, and it is widely known as a provider of franchise services to independently owned and operated hotels. As such, it has the exclusive right to sublicense the use of various trade names and service marks and logos ("the Marks"), as well as the "Ramada System," ("the System") which provides services to franchisees under the Ramada name, including a centralized reservations system, advertising, publicity, and training services. Ramada does not, and does not have the right to, own any hotel or motel properties. On December 15, 1998, Ramada entered into the "Ramada Franchise Systems, Inc. License Agreement" (the " License Agreement" or "Agreement") with the Katsaliroses for the operation of the Hotel. Under the License Agreement, Ramada granted the Katsaliroses a license to use the Ramada Marks and System in connection with the operation of the Hotel, while also setting forth the parameters governing their use. Pursuant to the Agreement, one means of recourse against a non-compliant franchisee is to terminate the Agreement. According to Ramada, the License Agreement with the Katsaliroses was terminated effective March 15, 2001, for failure to comply with quality assurance standards and failure to make timely royalty payments. According to Plaintiff, the Hotel continued to be operated as a Ramada Inn even after the alleged March 15 termination date. In any event, the parties do agree that the site had not been de-identified of all Ramada Marks at the time of the June 29, 2001 accident at issue in this case.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts

4

showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

### III. DISCUSSION

In the Complaint, Plaintiff alleges that she was a paying guest at the Hotel at the time of the June 29, 2001 accident. Compl. ¶ 7. She alleges that, at the time she was walking on the sidewalk toward the outdoor swimming pool, the Hotel premises were not reasonably safe because the defendants, acting through their employees and agents, had left a garden hose across the sidewalk. Comp. ¶ 12. Plaintiff alleges that the defendants failed to warn of the garden hose, remove the garden hose, or barricade the garden hose. Comp. ¶ 14. She states that she was injured as a result of stepping onto the garden hose. Compl. ¶ 15. The Katsaliroses and Ramada have filed separate Motions for Summary Judgment, arguing that there are no disputed issues of material fact and that they are entitled to judgment as a matter of law.

#### A. The Katsaliroses' Motion for Summary Judgment

Under Missouri law, liability for negligence exists only "when a defendant's conduct 'falls

5

below the standard [of care] established by law for the protection of others against unreasonable risk of harm,' and such conduct is the proximate cause of the plaintiffs' injuries." *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. 1993) (quoting Restatement (Second) of Torts § 282) (internal citation omitted). While the applicable standard of care is a question of law for the court, whether a defendant's conduct falls below the applicable standard of care is a question of fact for the jury. *Id.* If there is no evidence to support a finding that the defendant's conduct fell below the applicable standard of care, the court should not submit the case to a jury. *Id.* "When a plaintiff sues a possessor of land for injuries arising out of an unreasonably dangerous condition on that land, the standard of care owed by the defendant is defined by the relationship existing between the possessor of the land and the plaintiff[]." *Id*. A plaintiff will be considered an invitee if the plaintiff is a "'person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Id.* (quoting Restatement (Second) of Torts § 332). "The general duty owed to an invitee by the owner of the premises is the exercise of reasonable and ordinary care in making the premises safe." *Rycraw v. White Castle Sys. Inc.*, 28 S.W.3d 495, 499 (Mo. Ct. App. 2000). Under these circumstances, the possessor of land will be subject to liability if the possessor:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to [the invitee], and
> (b) should expect that [the invitee] will not discover or realize the danger or will fail to protect [herself] against it, and
> (c) fails to exercise reasonable care to protect [the invitee] against the danger.

*Harris*, 857 S.W.2d at 225-26 (internal quotation marks omitted). Thus, in order to recover, a plaintiff must show: "(1) a dangerous condition existed on defendant's premises which involved an unreasonable risk; (2) that [d]efendant knew or by using ordinary care should have known of the

6

condition; (3) that [d]efendant failed to use ordinary care in removing or warning of the danger; and (4) as a result, plaintiff was injured." *Rycraw*, 28 S.W.3d at 499.

The Katsaliroses make two arguments in support of their Motion for Summary Judgment. First, they state that Plaintiff has failed to establish an essential element of her claim because she has failed to show that the garden hose was a dangerous condition presenting an unreasonable risk of harm. In support of this assertion, the Katsaliroses state that, because Plaintiff "knowingly" stepped into the pool area and because she "knowingly" stepped onto the garden hose, the "placement of the hose across the sidewalk did not create a dangerous condition and therefore was not the instrumentality that caused her injury." Katsaliros Mem. in Supp. at 5. The Katsaliroses appear to believe that Plaintiff has failed to establish that the garden hose was a dangerous condition involving an unreasonable risk of harm because she knew that she was moving from a sidewalk to the "pool area" when she stepped onto the garden hose and she therefore would have known that the "nature and character of the area was changing." Katsaliros Rep. Mem. at 3. Though the Katsaliroses couch their argument in a manner suggesting that Plaintiff has failed to bring forth evidence to establish an element of her claim (i.e. that the garden hose created a dangerous condition), the crux of their argument appears to be that the garden hose, in fact, did not create a dangerous condition. Whether the garden hose created a dangerous condition is not the kind of issue which can be appropriately resolved on a Motion for Summary Judgment. Rather, whether the garden hose created a dangerous condition involving an unreasonable risk of harm is a question for the jury. *See, e.g., Harris*, 857 S.W.2d at 226 (whether condition was unreasonably dangerous was subject to reasonable dispute and was reserved for jury's consideration). Therefore, the Katsaliroses are not entitled to summary judgment on the basis of their first argument.

The Katsaliroses' second argument is that Plaintiff was aware of the existence of the garden hose because the hose was an "open and obvious" condition, and she failed to exercise due care to protect herself. Under Missouri law, "when the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees 'unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Harris*, 857 S.W.2d at 226 (quoting Restatement (Second) of Torts § 343A(1)). "A condition is open and obvious if invitees should reasonably be expected to discover it." *Peterson v. Summitt Fitness, Inc.*, 920 S.W.2d 928, 933 (Mo. Ct. App. 1996). In other words, "if a condition on the property is so open and obvious that an invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees unless the possessor should anticipate the harm despite such knowledge or obviousness." *Privitera v. Coastal Mart, Inc.*, 908 S.W.2d 779, 780 (Mo. Ct. App. 1995). In some cases, Missouri courts have found certain conditions to be so open and obvious that liability is precluded as a matter of law. *See, e.g.*, *Harris*, 857 S.W.2d at 227 (lake at end of obviously downward sloping road and less than 300 feet from location where car was parked was an open and obvious condition); *Heffernan v. Reinhold*, 73 S.W.3d 659, 666 (Mo. Ct. App. 2002) (unshored twelve by fifteen foot ditch in which plaintiff was working was an open and obvious condition); *Hellman v. Droege's Super Market, Inc.*, 943 S.W.2d 655, 658 (Mo. Ct. App. 1997) (visibly icy parking lot an open and obvious condition); *Peterson*, 920 S.W.2d at 933 (thirty-by-four-foot exposed wall of above-ground swimming pool an open and obvious condition; anyone entering pool area could be reasonably expected to discover the condition); *Seymour v. Lakewood Hills Assoc.*, 927 S.W.2d 405, 410 (Mo. Ct. App. 1996) (tree in center of road was so open and obvious that person

reasonably should be expected to see it and recognize danger posed). In other cases, however, Missouri courts have declined the invitation to find a given condition open and obvious as a matter of law, choosing instead to permit the case to go to the jury. *See, e.g.*, *Lewis v. Snow Creek, Inc.*, 6 S.W.3d 388, 393 (Mo. Ct. App. 1999) (unwilling to declare ice an open and obvious condition because issue of material fact remained as to the nature and character of the ice alleged to have caused the fall); *Quinn v. Lenau*, 996 S.W.2d 564, 568 (Mo. Ct. App. 1999) (danger posed by notch in tree limb was not open and obvious; though plaintiff was aware of notch, he did not know depth of notch and his view was obscured by moss); *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 904 (Mo. Ct. App. 1996) (unwilling to find that, as matter of law, placement of briefcase in hallway of doctor's office was open and obvious to plaintiff); *Privitera*, 908 S.W.2d 779, 781 (unwilling to find that parking lot riddled with holes on which woman caught heel of her shoe was open and obvious condition).

The Katsaliroses argue that this Court should find that the garden hose was an "open and obvious" condition as a matter of law. According to the Katsaliroses, the garden hose at issue was clearly visible to anyone attempting to enter the pool area of the Hotel because it was "plainly visible" and the garden hose was "known" to Plaintiff, making it an open and obvious danger to her. They argue that, when Plaintiff decided to enter the pool area, she should have realized the danger of entering such an area, used her judgment to discover the "obvious condition" of the garden hose, appreciate the risk it presented, and "take the minimal steps necessary to avert injury." Katsaliros Mem. in Supp. at 7. According to the Katsaliroses, there was nothing to prevent Plaintiff from seeing the garden hose as she walked down the sidewalk, and she saw the garden hose before she stepped onto it. Thus, the Katsaliroses claim that they reasonably could have expected Plaintiff to take

9

precautions to avoid the harm posed by the garden hose. However, according to Plaintiff, she saw the garden hose as she was stepping down, and did not see it in time to avoid stepping onto it. Plaintiff also states that the garden hose was green, "the same color as the badly peeling green safety paint on the walkway." Pl. Mem. in Opp. at 3.

Like the courts in *Lewis*, *Quinn*, *Morrison*, and *Privitera*, this Court is unwilling to find that the garden hose was an open and obvious condition as a matter of law. Though some statements in Plaintiff's deposition appear to indicate she was aware of the garden hose at some point before stepping onto it, other statements appear to indicate that she was not aware of the garden hose until just before stepping onto it. *See* Deposition of Ethel J. Hunter: p. 17, lines 6-11; p. 17, lines 17-22; p. 29, lines 7-13; p. 19, lines 15-25; p. 20, lines 1-6; p. 24, lines 7-21; p. 25, lines 6-14; p. 26, lines 17-20.[3] It is not clear when Plaintiff became aware of the garden hose. It is also not clear that the garden hose was "plainly visible" as the Katsaliroses claim, especially when viewing the facts in the light most favorable to Plaintiff.[4] *See Kenney v. Swift Transportation, Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003) (court must view facts in light most favorable to non-movant and must give non-movant benefit of all reasonable inferences). There remain issues of fact to be determined by the jury, and the parties' arguments regarding the reasonableness of Plaintiff's actions will be for the jury to

---

[3]The Katsaliroses point out that Plaintiff submitted two pages of corrections to her deposition and that these corrections were submitted only after this Motion for Summary Judgment was filed. The Katsaliroses argue that the corrections are actually an attempt to make substantive changes to the deposition testimony and that such changes should be disregarded for that reason. The Court need not reach this issue because the original deposition testimony, even without Plaintiff's corrections, clearly indicates that issues of fact remain and that summary judgment is inappropriate in this case.

[4]For example, Plaintiff claims that the garden hose was green and that the walkway's green safety paint was badly peeling.

evaluate. In light of the factual circumstances of this case, the Court is unable to conclude that the garden hose was an open and obvious condition as a matter of law. Thus, the Katsaliroses' argument to the contrary must fail.

Because the Katsaliroses cannot prevail on the basis of their theory that, as a matter of law, the garden hose was not a dangerous condition, and because liability is not precluded on the theory that the garden hose was an open and obvious condition, they are not entitled to judgment as a matter of law and their Motion for Summary Judgment will be denied.

B.  Ramada's Motion for Summary Judgment

In its Motion for Summary Judgment, Ramada argues that, as a matter of law, Plaintiff cannot establish that Ramada is liable for Plaintiff's injury. According to Ramada, Plaintiff can demonstrate neither that Ramada's direct negligence led to her injury nor that Ramada is vicariously liable for the alleged negligence of the Katsaliroses. Plaintiff opposes the Motion by arguing that there is a disputed issue of material fact as to whether Ramada exercised sufficient control, through its right to conduct unannounced inspections, over the conduct of the Katsaliroses in keeping the swimming pool equipment operating and in good condition and in keeping the walkway uncluttered and safe. Though Ramada addresses both direct and vicarious theories of liability in its Motion, Plaintiff focuses her argument solely on the issue of vicarious liability, effectively conceding that Ramada is not liable for her injury based upon a direct negligence theory.[5] Plaintiff's theory of liability is that

---

[5]Any argument by Plaintiff that Ramada is directly liable for her injuries would fail as a matter of law. To establish that Ramada is directly liable for her injury, Plaintiff first must demonstrate that Ramada owed her a duty of care. *See Hecker v. Property Ins. Placement Fac.*, 891 S.W.2d 813, 816 (Mo. 1995) (in any negligence action, a plaintiff must demonstrate that defendant had a duty to plaintiff, defendant failed to perform that duty, and defendant's breach was the proximate cause of the plaintiff's injury); *see also Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. 1988) (whether duty exists is a question of law for the court). Defendant Ramada states,

11

Ramada had control over the operation of the Hotel, which makes it jointly responsible with the Katsaliroses for her injuries.

The issue before the Court on Ramada's Motion for Summary Judgment is whether Ramada can be held vicariously liable for Plaintiff's injury. To establish vicarious liability, Plaintiff must demonstrate that there was a principal-agent relationship between Ramada and the Katsaliroses at the time of her injury. *Bost v. Clark*, 116 S.W.3d 667, 675 (Mo. Ct. App. 2003); *see also State v. Hicks*, 535 S.W.2d 308, 312 (Mo. Ct. App. 1976) (one person not answerable for misconduct of another absent showing of existence of relationship between the two which would render one liable for actions of the other). An agency relationship is defined by two elements: (1) the principal consents, expressly or impliedly, to the agent acting on its behalf; and (2) the agent is subject to the principal's control. *Bost*, 116 S.W.3d at 676.[6]  "[T]he touchstone is whether the party sought to be held liable

---

and Plaintiff does not dispute, that a franchisor does not have any general duty to either its franchisee or the guests or customers of its franchisee. A duty could arise, however, if the franchisor has sufficient control over the daily operations of its franchisee. *See Helmchen v. White Hen Pantry, Inc.*, 685 N.E.2d 180, 181 (Ind. App. Ct. 1997). However, as explained below, there is no genuine dispute that Ramada lacked control over the day-to-day operations of the Hotel. Thus, Ramada owed no duty of care to Plaintiff, and Ramada cannot be held directly liable for Plaintiff's injury.

[6]In addition to an actual agency relationship, an agency relationship may be deemed to exist for purposes of vicarious liability when an alleged principal causes a third person to believe that someone is his agent, thereby rendering the principal liable for any loss associated with the third party's reasonable reliance on the care and skill of the presumed agent. *Restatement (Second) of Agency* § 27 (1958). Plaintiff does not rely on this theory of agency in making her argument in opposition to the Motion for Summary Judgment. Nevertheless, the Court will point out that an apparent agency argument would fail as a matter of law. The apparent authority of an agent must be based on some conduct by the alleged principal, and the injured party's reliance on that conduct must be reasonable and must be the cause of the injury. *See id.* cmt b. Plaintiff has not argued, or provided sufficient evidence, that she was somehow led to believe that the Katsaliroses were agents of Ramada or that reliance on such representations caused her injury. Indeed, Plaintiff does not dispute that Section 3.13 of the License Agreement requires that franchisees avoid any confusion on the part of guests, creditors, lenders, investors, and the public

has the control or right to control the conduct of another in the performance of an act." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996).

In the franchisor context, the existence of a principal-agent relationship depends on the "nature and extent of control and supervision retained and exercised by the franchisor over the method or details of conducting . . . day-to-day operations." *Hayman v. Ramada Inn, Inc.*, 357 S.E.2d 394, 397 (N.C. App. Ct. 1997). At the same time, courts are generally mindful that a franchisor does have a legitimate interest in retaining some degree of control in order to protect the integrity of its marks. *See, e.g.*, *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 338 (Wis. 2004) (franchise agreements typically impose detailed requirements, but existence of these requirements does not mean franchisors have role in managing day-to-day operations); *Raines v. Shoney's, Inc.*, 909 F.Supp. 1070, 1078 (E.D. Tenn. 1995) (protection of trademark and service mark is necessary duty of franchisor); *Anderson v. Turton Dev., Inc.*, 483 S.E.2d 597, 600-01 (Ga. App. Ct. 1997) (franchisor has interest in safeguarding uniformity, value, and integrity of franchise system); *Murphy v. Holiday Inns, Inc.*, 219 S.E.2d 874, 877-78 (Va. 1975) (franchisor is required under Lanham Act, 15 U.S.C. § 1051 *et seq.*, to preserve mark by regulating activities of franchisees; purpose of controls

---

as to their ownership and operation of a hotel and the identity of the franchisees. Further, Plaintiff does not dispute that Ramada requires its franchisees to affirmatively disclose its franchise status. Finally, Plaintiff does not dispute that Ramada, through its directory and required signage at the front desk of each hotel, explains that all Ramada locations are independently owned and operated under license agreements. There is no evidence of any false representation or concealment by anyone regarding the relationship between Ramada and the Katsaliroses. Plaintiff does intimate that she did not see any signs indicating that the Hotel was independently owned and operated. This does not create an issue of disputed fact. Even if Plaintiff's assertion (i.e. that the required signs were not visible) is taken as true, her argument would nonetheless fail because she utterly fails to cite to any facts evidencing her reliance on any alleged belief that the Katsaliroses were acting as agents of Ramada.

contained in agreement was to achieve standardization, uniformity, and optimum public good will). Of course, the mere fact that a franchise agreement governs the parties' relationship does not automatically preclude a finding that an agency relationship exists. Indeed, "[i]f a franchise contract so regulates the activities of the franchisee as to vest the franchisor with control within the definition of agency, the agency relationship arises even though the parties expressly deny it." *Murphy*, 219 S.E.2d at 877; *see also Shell Oil*, 922 S.W.2d at 764. However, courts have found that retaining certain rights such as the right to enforce standards, the right to terminate the agreement for failure to meet standards, the right to inspect the premises, the right to require that franchisees undergo certain training, or the mere making of suggestions and recommendations does not amount to sufficient control. *See, e.g.*, *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F.Supp.2d 83, 88 (E.D.N.Y. 2000) (inspect; enforce standards); *Helmchen*, 685 N.E.2d at 181 (terminate; make suggestions and recommendations); *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 814 (standards manual); *Hayman*, 357 S.E.2d at 397 (requirement that premises be kept clean and safe; inspect).

According to Plaintiff, there are disputed issues of fact as to whether Ramada controlled, or had the right to control, the conduct of the Katsaliroses and their employees regarding the condition of the swimming pool and the walkway. Essentially, Plaintiff's view is that this control was exercised, or could have been exercised, through Ramada's right to conduct "unlimited inspections" of the Hotel to ensure compliance with Ramda's System Standards Manual, "which required Peter Katsaliros to keep the swimming pool equipment in good operating condition and to maintain the walkway safe and free of clutter." Pl. Mem. in Opp. at 3. According to Plaintiff, the License Agreement and System Standards Manual provide Ramada with the right to control the conduct of the Katsaliroses

14

with respect to conditions on the premises, and a provision in the License Agreement stating that the franchisee is an independent contractor does not negate the control provided by the other terms of the License Agreement.[7] In support of this proposition, Plaintiff points to provisions in the System Standards Manual which state that the franchisee "must" maintain the exterior walkways in a safe condition, with no clutter, and that the swimming pool area and equipment be maintained in a safe condition.[8] Plaintiff also argues that Ramada's right to require the general manager from the Hotel to be trained for at least one week at Ramada's headquarters indicates that Ramada exercises some control over the Katsaliroses' employees. Plaintiff further argues that Ramada has the power to enforce this control by terminating the Agreement, imposing liquidated damages, forcing the Katsaliroses to pay attorneys' fees, or suspending the Katsaliroses' right to use the reservation system.[9]

---

[7]Plaintiff cites *J.M. v. Shell Oil Company*, 922 S.W.2d 759 (Mo. 1996), in support of this proposition. *Shell Oil* is both factually and legally distinguishable from the present case. Unlike Ramada, Shell Oil owned the land and was acting as a landlord at the time of the accident. *Id.* at 761. In conducting its analysis, the court relied on Shell Oil's status as lessor. *Id.* at 764. Ramada was not and never has been the owner of the Hotel, and was not acting as the Katsaliroses' landlord.

Moreover, the *Shell Oil* court was concerned that the operator's agreement at issue in the case contained internally contradictory terms because some provisions declared there was no agency relationship while others gave detailed guidance on a variety of issues. *Id.* at 764. The court determined that this inconsistency gave rise to a factual question regarding the amount of control Shell Oil exercised over its tenant's security measures. In contrast, the License Agreement in the instant case raises no such issues.

[8]According to Plaintiff, this provision also requires Defendant Ramada's inspectors to inspect for deficiencies in the swimming pool faucet and for any clutter in the walkways. Plaintiff does not offer any authority in support of the proposition that the inspectors were "required" to inspect the faucet or to look for clutter in the walkways.

[9]In addition to these arguments, Plaintiff states that there is a dispute as to whether Ramada's right to control terminated on March 15, 2001, or at any time prior to the June 29, 2001 accident. Because the Court has determined that Ramada never exercised sufficient control

A thorough review of the License Agreement reveals that, contrary to Plaintiff's argument, neither the License Agreement nor the Systems Standards Manual provided Ramada with control over the daily operation of the Hotel. Indeed, the License Agreement makes it clear that the Katsaliroses were independent contractors:

> 16.1 **Independence.** You are an independent contractor. You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever. . . . You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, [and] employment practices and policies. . . .

Ramada's Ex. C at 17. While the License Agreement does impose certain obligations on the franchisee, these provisions are clearly intended to ensure that Ramada has the control necessary to preserve the uniformity and standards of its franchise system. The Agreement cannot be said to give Ramada the control over the day-to-day operations of the Hotel necessary to create an agency relationship. For example, Section 3.4 of the Agreement provides that the Hotel be operated and maintained in compliance with system standards:

> . . . You will keep the Facility in a clean, neat, and sanitary condition. You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards. . . .

---

to establish an agency relationship, the Court need not address this argument. Ramada did not control or have the right to control the Hotel at any time on, before, or after the effective termination date.

Plaintiff also states that Ramada specifically directed the Katsaliroses to make certain repairs during an April 13, 1999 inspection, including the addition of specific Ramada Inn signs, installation of specific new finish systems, replacement of light globes, replacement of the stairwell railings, work to the swimming pool tile, painting the dumpster, and work on the parking lot. Requiring its franchisee to make these repairs does not present a question of fact regarding Ramada's control. Requiring such repairs is consistent with Ramada's legitimate right to ensure the property is in compliance with the system standards and does not provide a basis for finding the existence of an agency relationship. Plaintiff offers no explanation to the contrary.

Ramada's Ex. C at 3. Section 4.8 of the Agreement permits Ramada to conduct quality assurance inspections of the Hotel to ensure compliance with system standards:

> **Inspections and Audits.** We have the unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3.8. We have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection. . . . Our inspections are solely for the purposes of checking compliance with System Standards.

Ramada's Ex. C at 8. It is clear that the general purpose of the contract is the maintenance of uniform service within the Ramada Inn system. Ramada did not retain authority over, or even establish standrds for, the hiring, firing, supervision, or discipline of the Hotel's employees. Further, Ramada did not retain authority over the numerous other details of the Hotel's day-to-day operation. The License Agreement does not provide Ramada with control sufficient to hold it vicariously liable for the actions of the Katsaliroses or their employees.

Therefore, even viewing the facts in the light most favorable to Plaintiff, there is no basis for finding that Ramada exercised control over the day-to-day operations of the Hotel. The arguments made by Plaintiff in support of her contention that Ramada had a right to control are unpersuasive. First, there is no evidence that Ramada had the power to control the daily maintenance of the Hotel. Despite Plaintiff's arguments to the contrary, the right to conduct unannounced inspections does not give rise to the power to control the daily maintenance of the premises.[10] Second, there is no evidence that Ramada had any power to hire or fire Hotel employees, determine their wages or working conditions, set standards for their productivity, supervise their work routines, or discipline

---

[10]Even the provision of the License Agreement permitting inspections limits the purpose of the inspections: "Our inspections are solely for the purposes of checking compliance with System Standards." Ramada's Ex. C at 8.

them. Ramada's requirement that the general managers of the Hotel attend certain orientation seminars does not amount to control over the Hotel employees' activities. Finally, Defendant Ramada's power to terminate the Agreement, impose liquidated damages, force the Katsaliroses to pay attorneys' fees, or restrict the Katsaliroses from Ramada's reservation system do not give it control over the day-to-day operation of the Hotel. Because Plaintiff can point to no disputed issues of material fact, and because, as a matter of law, Plaintiff cannot establish that Ramada is directly or vicariously liable for her injury, Ramada is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Pete and Thelma Katsaliros' Motion for Summary Judgment [doc. #34] is **DENIED**.

**IT IS FURTHER ORDERED** that Ramada Worldwide, Inc. f/k/a Ramada Franchise Systems, Inc.'s Motion for Summary Judgment Against Plaintiff [doc. #37] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall amend the docket sheet to indicate that Defendant Ramada Franchise System, Inc. is now known as Ramada Worldwide, Inc., as reflected in the caption of this Order.

An appropriate Order of Judgment shall accompany this order.

Dated this <u>23rd</u> day of June, 2005.

                                                                        *E. Richard Webber*

                                                                        ————————————————
                                                                        E. RICHARD WEBBER
                                                                        UNITED STATES DISTRICT JUDGE